UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: _____

DAVID M. LEVINE, not individually,
but solely in his capacity as Receiver for
ECAREER HOLDINGS, INC. and
ECAREER, INC.,

    Plaintiff,

v.

JOSEPH AZZATA and
CARLA AZZATA,

    Defendants.

_____/

## COMPLAINT

Receiver David M. Levine, not individually, but solely in his capacity as the court-appointed receiver (the "Receiver") for eCareer Holdings, Inc. and eCareer, Inc. (collectively, the "Receivership Entities" or "eCareer"), files this Complaint against Defendants Joseph Azzata and Carla Azzata (collectively, the "Defendants"), and alleges:

### Description of the Action

1.    This action is brought pursuant to the Court's May 22, 2015 Order Granting Plaintiff's Motion for Appointment of Receiver (the "Order Appointing Receiver") issued by the United States District Court for the Southern District of Florida in *Securities and Exchange Commission v. eCareer Holdings Inc., et al.*, Case No. 15-80446-CIV-COHN/SELTZER (the "SEC Enforcement Action"), which, among other things, appointed the Receiver to marshal the Receivership Entities' assets for the benefit of all of the Receivership Entities' defrauded investors. A copy of the Order Appointing Receiver is attached as Exhibit A.

2.     Pursuant to the Order Appointing Receiver, the Receiver seeks to obtain a judgment for, among other things, fraudulent transfers, conversion, unjust enrichment, and equitable lien based on monies the Defendants received from the Receivership Entities.

## Venue, Parties, and Jurisdiction

3.     Pursuant to the Order Appointing Receiver, the Receiver is obligated to take immediate possession of all of the Receivership Entities' property, assets and estate, and all other property of the Receivership Entities of every kind whatsoever and wheresoever located.

4.     The Order Appointing Receiver empowers the Receiver to file actions and legal proceedings, for the benefit and on behalf of the Receivership Entities and their investors and other creditors, as the Receiver deems necessary against any individuals or entities, which the Receiver may claim have wrongfully, illegally or otherwise improperly misappropriated or transferred monies or other proceeds directly or indirectly traceable from investors in the Receivership Entities, including the Receivership Entities and the Defendants and Relief Defendants named in the SEC Enforcement Action. Ex. A at ¶ 2. Such rights of action, as well as title to all property, real or personal of the Receivership Entities, wherever located within or outside this state, are vested by operation of law in the Receiver.

5.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 754, 1367 and 1692, because: (1) the Receiver sues to accomplish the ends sought in the SEC Enforcement Action (*i.e.*, the marshaling of assets for the benefit of the Receivership Entities' defrauded investors) wherein his appointment was made and such an action is ancillary; (2) the Receiver files this ancillary action in the same district wherein the Receiver was appointed; (3) the Receiver is empowered by the Order Appointing Receiver entered in the SEC Enforcement Action to take custody, control, and possession of the Receivership Entities' assets by

investigating and instituting actions (if necessary) against individuals or entities with possession of such assets; (4) the Receiver's claims against the Defendants seek to recover such assets, pursuant to the Order Appointing Receiver entered in the SEC Enforcement Action; and (5) the claims raised in this Complaint are so related to the claims involved in the SEC Enforcement Action that they form part of the same case or controversy under Article III of the United States Constitution.

6.  Venue is proper in this District because, as set forth more fully below, because (1) the Defendants were unjustly enriched, committed the tort of conversion in, and/or were the transferees and/or recipients of fraudulent transfers within this District; (2) the agency relationship and business venture, which operated a securities fraud specifically giving rise to the Receiver's claims, was operated in and out of this District; (3) the SEC Enforcement Action, to which this suit is ancillary, is pending in this District; (4) trying this ancillary action and the SEC Enforcement Action before the same court will avoid redundancy and preserve scarce judicial resources because this Court is already familiar with the general facts of the SEC Enforcement Action; and (5) trying this action in this District would not be so gravely difficult and inconvenient that the Defendants would, for all practical purposes, be deprived of their day in court.

7.  eCareer Holdings, Inc. is a Boca Raton, Florida-based company, originally incorporated in Nevada in March 2005 as Barossa Coffee Company, Inc. On August 30, 2012, Barossa acquired the outstanding shares of eCareer, Inc., a private entity, then Barossa changed its name to eCareer Holdings, Inc. The merger was completed on April 11, 2013. Pursuant to the Order Appointing Receiver, eCareer Holdings, Inc. was placed into receivership and the Receiver was appointed to marshal its assets for the benefit of all of its defrauded investors.

8.  eCareer, Inc. is a Boca Raton, Florida corporation, incorporated in 2009 and is a wholly-owned subsidiary of eCareer Holdings, Inc. Pursuant to the Order Appointing Receiver, eCareer, Inc. was placed into receivership and the Receiver was appointed to marshal its assets for the benefit of all of its defrauded investors.

9.  Joseph Azzata is an individual who resides in the Southern District of Florida, and is the controlling shareholder, Chief Executive Officer, and Chairman of the Board of eCareer Holdings, Inc. Joseph Azzata is named as a defendant in the SEC Enforcement Action.

10.  Carla Azzata is an individual who resides in the Southern District of Florida, and is Joseph Azzata's wife. Carla Azzata has never been employed by the Receivership Entities. Carla Azzata is named as a relief defendant in the SEC Enforcement Action.

11.  This Court has personal jurisdiction over the Defendants, and venue is proper in the Southern District of Florida because many of the acts and transactions constituting the violations alleged in this Complaint occurred in this District. Moreover, the Defendants reside in this District.

### The Order Appointing Receiver

12.  The Order Appointing Receiver granted the Receiver various powers, including, but not limited to, the specific power to institute such actions and legal proceedings as the Receiver deems necessary with respect to misappropriated funds or transfers of monies or other proceeds directly or indirectly traceable from the defrauded investors in the Receivership Entities, including actions for recovery and/or avoidance of fraudulent transfers under Florida Statute § 726.101, *et. seq.* or otherwise. Ex. A at ¶ 2.

13.  The claims alleged herein all seek to recover money and property directly or indirectly traceable from the defrauded investors in the Receivership Entities, pursuant to the

4

Order Appointing Receiver. The claims alleged herein are also specifically contemplated by the terms of the Order Appointing Receiver.

### Overview of eCareer's Fraud

14. The SEC's Complaint in the SEC Enforcement Action charges eCareer, and its various principals and affiliates, with violating federal securities laws in connection with the sale of penny stock to the general public.

15. Under its penny-stock scheme, eCareer hired various companies and individuals to act as sales agents and raise capital by selling shares of eCareer's stock.

16. eCareer, by and through its sales agents, targeted elderly, unsophisticated and unaccredited individuals for investments by soliciting them through cold-calls, roadshows, and in-person meetings.

17. In doing so, eCareer and its sales agents made multiple material misrepresentations and omissions to its investors. For example, they falsely informed investors that eCareer shares was a good investment and the investors' funds would be used for eCareer's business development and working capital when, in fact, eCareer paid fees of approximately 30% to its sales agents and, as discussed in more detail below, the Defendants misappropriated the investor funds for their own use.

18. In addition, several of eCareer's sales agents were barred from participating in penny-stock offerings and the securities industry, but this information was never disclosed to the investors. To the contrary, the investors were informed that commissions would only be paid to licensed broker-dealers, which was false.

19. Further, eCareer misrepresented to the SEC in its public filings that it would only sell stock to accredited and sophisticated investors when, in fact, eCareer was selling stock to

5

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 22nd Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

many unsophisticated and unaccredited individuals.

20. In sum, eCareer defrauded over 400 investors out of more than $11 million by, *inter alia*, failing to disclose exorbitant sales fees, misrepresenting the use of investor proceeds, using unregistered brokers and dealers, concealing its brokers' prior disciplinary history and bars from participating in the securities industry, misrepresenting that the sale of eCareer's stock would only be made to accredited or sophisticated investors, misappropriating investor proceeds, and misrepresenting material facts in its SEC filings.

21. As a result of this fraudulent scheme, the SEC named, among others, Joseph Azzata as a defendant and Carla Azzata as a relief defendant in the SEC Enforcement Action.

22. On October 5, 2015, this Court entered a judgment against Joseph Azzata in the SEC Enforcement Action.

23. On November 12, 2015, this Court entered a judgment against Carla Azzata in the SEC Enforcement Action.

### The Defendants Misappropriated Defrauded Investor Funds

24. The Defendants misappropriated over $650,000 of the Receivership Entities' defrauded investor proceeds, including but not limited to, $47,000 in ATM cash withdrawals, $135,000 for motorsport related expenditures, $88,000 in direct payments to Carla Azzata, $175,000 in American Express charges by Carla Azzata, $25,000 in school tuition for the Defendants' children, and over $59,000 at various retail merchants.

25. Although Carla Azzata was never employed by the Receivership Entities and did not otherwise provide any consideration or value to the Receivership Entities, she received $88,000 in direct payments from eCareer and used $175,000 in the defrauded investor funds to pay off her personal credit card charges.

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 22nd Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

26.     The Defendants used some of the funds they misappropriated from the Receivership Entities' defrauded investors to make payments on their first mortgage, which was secured by the real property located at 2751 NW 26th Ct., Boca Raton, Florida 33434 (the "Property"). The first mortgage was recorded on November 18, 2005, in the Official Records of Palm Beach County, Florida, at Book 19554, and Page 0570 (the "First Mortgage").

27.     The Defendants used some of the funds they misappropriated from the Receivership Entities' defrauded investors to make payments on their line of credit, which was also secured by the Property. The line of credit was recorded on April 28, 2006, in the Official Records of Palm Beach County, Florida, at Book 20261, and Page 1119 (the "Line of Credit").

### The Defendants Used Defrauded Investor Funds to Pay their First Mortgage

28.     Between August 16, 2010 and September 26, 2012, defrauded investor funds were directly used to make at least 14 of the Defendants' First Mortgage payments, in the total amount of $63,739.80, through payments issued by eCareer.

29.     Upon information and belief, Joseph Azzata and/or Carla Azzata also used defrauded investor funds that are directly or indirectly traceable to the Receivership Entities to make additional First Mortgage payments.

30.     For example, Carla Azzata deposited approximately $86,500 of funds directly traceable to the Receivership Entities into her checking account at Regions Bank. After depositing the $86,500 into this account, Carla Azzata made approximately $50,089.87 in First Mortgage payments from funds contained in this account.[1]

---

[1] Based on copies of the checks the Receiver obtained from the servicers of the First Mortgage and Line of Credit, the Defendants used multiple accounts to make their First Mortgage and Line of Credit payments. A forensic analysis of these accounts may reveal that additional funds directly or indirectly traceable to the Receivership Entities were used to make additional First Mortgage and Line of Credit payments, in which case the Receiver reserves his right to amend this Complaint accordingly.

### The Defendants Used Defrauded Investor Funds to Pay their Line of Credit

31.     Between August 6, 2010 and September 26, 2012, defrauded investor funds were directly used to make at least 13 of the Line of Credit payments, in the total amount of $6,260.92, through payments issued by eCareer.

32.     Upon information and belief, Joseph Azzata and/or Carla Azzata also used defrauded investor funds that are directly or indirectly traceable to the Receivership Entities to make additional Line of Credit payments.

33.     For example, Carla Azzata deposited approximately $86,500 of funds directly traceable to the Receivership Entities into her checking account at Regions Bank. After depositing the $86,500 into this account, Carla Azzata made approximately $4,994.23 in Line of Credit payments from funds contained in this account.[2]

### COUNT I: FRAUDULENT TRANSFER

34.     The Receiver realleges and reincorporates paragraphs 1 through 33 above as if fully set forth herein.

35.     This is a claim to avoid and recover fraudulent transfers pursuant to Sections 726.105(1)(a) and 726.105(1)(b), Florida Statutes, against the Defendants.

36.     The Receivership Entities transferred over $650,000 of defrauded investor funds to the Defendants for use by the Defendants.

37.     At the time of the transfers, the Receivership Entities (with their principals and affiliates) were engaged in a fraudulent penny-stock scheme and thus had the actual intent to delay, hinder, or defraud creditors and made the transfers to delay, hinder, or defraud creditors. In addition, because the Receivership Entities were engaged in a fraudulent penny-stock scheme,

---

[2] *See* footnote 1 *supra*.

the Receivership Entities were *de facto* insolvent.

38. The Defendants did not pay any value – let alone any reasonably equivalent value – in exchange for the Receivership Entities' transfers of over $650,000 to the Defendants, all of which was comprised of defrauded investor funds, and all of which the Defendants used for their own benefit.

39. As a direct and proximate result of the Receivership Entities' transfers of $650,000 to the Defendants, the Receivership estate has been diminished. The remaining assets of the Receivership Entities are insufficient to pay the Receivership Entities' liabilities.

40. Accordingly, the transfers of $650,000 to the Defendants are avoidable pursuant to Chapter 726, Florida Statutes.

## COUNT II: CONVERSION

41. The Receiver realleges and reincorporates paragraphs 1 through 33 above as if fully set forth herein.

42. This is a claim for conversion against the Defendants.

43. The Receivership Entities own the defrauded investor funds transferred to the Defendants.

44. The Defendants wrongfully exercised dominion and control over the defrauded investor funds, to the detriment of, and inconsistent with, the Receivership Entities' ownership rights thereto, when the Defendants used the defrauded investor funds for their own benefit.

45. The Defendants were not authorized by the Receivership Entities to assert any control over, manage, or dispose of the defrauded investor funds and, notwithstanding, the Defendants have wrongfully and permanently deprived the Receivership Entities of its property.

## COUNT III: UNJUST ENRICHMENT

46. The Receiver realleges and reincorporates paragraphs 1 through 33 above as if fully set forth herein.

47. This is an equitable claim of unjust enrichment against the Defendants.

48. The Receivership Entities conferred a substantial benefit on the Defendants, namely the Defendants received defrauded investor funds for their own use.

49. The Defendants knew or should have known that they received defrauded investor funds for their own use.

50. Notwithstanding, the Defendants voluntarily accepted and retained the defrauded investor funds transferred to them.

51. In receiving and utilizing the defrauded investor funds, the Defendants have unjustly retained a benefit to the detriment of the Receivership estate.

52. It is inherently unfair and inequitable that the Defendants be able to retain the benefit of receiving the defrauded investor funds for their own use, without paying value to the Receivership Entities for use of its funds.

53. Accordingly, equity dictates that the Defendants return to the Receivership estate the defrauded investor funds they received.

54. In addition, as a direct and proximate result of the Defendants' retention and use of the defrauded investor funds, the Receivership estate has been diminished.

## COUNT IV: EQUITABLE LIEN

55. The Receiver realleges and reincorporates paragraphs 1 through 33 above as if fully set forth herein.

56. This is a claim for imposition of an equitable lien on the Property titled in the name of the Defendants.

57. The Defendants have wrongfully deprived the Receivership Entities of its assets and failed to provide the Receivership Entities with any consideration for said assets, by using the Receivership Entities' defrauded investor funds to make payments on the Defendants' First Mortgage and Line of Credit, which are both secured by the Property.

58. The Defendants, in receiving and retaining the transfers comprising of the Receivership Entities' defrauded investor funds to and for their own benefit, have unjustly retained a benefit to the detriment of the Receivership estate.

59. The Defendants are not bona fide mortgagors who made all of their First Mortgage and Line of Credit payments from legitimate sources of funds; rather, the Defendants used the Receivership Entities' defrauded investor funds directly or indirectly to make some of their First Mortgage and Line of Credit payments.

60. As a direct and proximate result, the Defendants have been unjustly enriched by retaining the Receivership Entities' defrauded investor funds, which were used to make certain payments on the First Mortgage and Line of Credit, which were secured by the Property owned by the Defendants.

61. Accordingly, the Receiver should be granted an equitable lien on the Property on behalf of the Receivership estate in the amount of the defrauded investor funds directly or indirectly traceable to the Receivership Entities that were used by the Defendants to make payments on their First Mortgage and Line of Credit.

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 22nd Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

**WHEREFORE**, David M. Levine, not individually, but solely in his capacity as Receiver for eCareer Holdings, Inc. and eCareer, Inc., demands judgment as follows:

A.  Setting aside the transfers by and/or to the Defendants, directly or indirectly;

B.  Entering a money judgment against the Defendants in an amount not less than $650,000.00, together with interest thereon from the date of the transfers;

C.  Imposing an equitable lien on the Property and/or a judgment authorizing the Receiver to initiate legal proceedings to foreclose on the Property based on the Receivership estate's interest in and entitlement to an equitable lien on the Property; and,

D.  Providing such other and further relief as the Court deems just and appropriate.

Dated: December 30, 2015

Respectfully submitted,

LEVINE KELLOGG LEHMAN
SCHNEIDER + GROSSMAN LLP
*Counsel for the Receiver*
201 South Biscayne Blvd.
Miami Center, 22nd Floor
Miami, Florida 33131
Phone: (305) 403-8788
Fax: (305) 403-8789

By:  /s/ *Matthew J. McGuane*
MATTHEW J. MCGUANE
Florida Bar No. 0084473
E-mail: mjm@lklsg.com